UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSA M. ZARATE,

        Plaintiff,        CIVIL ACTION NO. 10-CV-10020

vs.

                        DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be denied, Defendant's Motion For Summary Judgment (docket no. 10) be GRANTED and the instant case DISMISSED.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of May 8, 2006 alleging that she had been disabled since January 30, 2006 due to multiple musculoskeletal impairments and depression. (TR 108-13, 111, 131, 141). The Social Security Administration denied benefits. (TR 67-71). Administrative Law Judge John S. Pope (ALJ) held a de novo video hearing on May 5, 2009 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability within the meaning of the Social Security Act at any time from January 30, 2006 through the date of the ALJ's May 26, 2009 decision. (TR 13, 47-56). The Appeals Council declined to review the

ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.  Plaintiff's Testimony

Plaintiff was 52 years old at the time of the hearing. (TR 17-18, 54). Plaintiff has a GED. (TR 20). Plaintiff lives with her son in a two-story house. (TR 19). Plaintiff has a driver's licence. (TR 20, 163). Plaintiff's past work was in assembly and her last day of work was January 30, 2006. (TR 21). Plaintiff testified that she stopped working when she got injured at work and severe pain in her right shoulder and neck prevent her from working. (TR 21-22). Plaintiff testified that she has carpal tunnel syndrome in both wrists with numbness and some spasm-like feeling in the left wrist. (TR 23, 33). Plaintiff testified that cold weather reduces her pain. (TR 34). Plaintiff testified that she could walk two hours out of an eight-hour day and could sit for approximately four hours of an eight-hour day if she could change position every fifteen to twenty minutes. (TR 34-35). Plaintiff can lift up to six pounds with "no problem" and can "sometimes" lift a gallon of milk with both hands. (TR 34, 165). She testified that she has difficulty opening jars and sometimes drops things. (TR 23, 36).

Plaintiff testified that she takes medications Cymbalta, Darvocet and Xanax and she believes they help her. (TR 26). She testified that she has side effects of dizziness, nausea and sometimes vomiting and constipation. (TR 26). If she takes the medications at night she does not have side effects because she goes to sleep; if she is still awake, the side effects last approximately thirty minutes. (TR 26).

Plaintiff takes her son to school in the morning, fixes her own breakfast, reads for up to twenty minutes, cleans the house, does the dishes and picks up her son from school. (TR 27-28, 160, 164). She goes to school herself in the evening, leaving for school at approximately 5:00 p.m. and returning as late as 10:00 p.m. (TR 27-28). Plaintiff testified that she is studying to be a medical assistant and would be participating in an internship the following July. (TR 29). Plaintiff can perform her own personal hygiene and dressing, she does the laundry with her son and she grocery shops. (TR 29). She sometimes walks for exercise. (TR 29). Plaintiff testified that she takes a nap every day for no more than thirty-five minutes. (TR 37).

Plaintiff testified that with respect to her psychological conditions, she used to feel that she could not be around people, but now she can because she is in school. (TR 30). Plaintiff testified that he doctor thought her condition was depression and Plaintiff did not know how that would affect her ability to work. (TR 30). Plaintiff testified that she believed her medication and visits with her psychologist were helping. (TR 31). Plaintiff testified that she sometimes has problems with concentration and she misses questions on her tests at school. (TR 32).

### B. Medical Evidence

The Court has reviewed in full the records in this matter. Plaintiff suffered an injury at work in October 2005 resulting in a pain in her neck and down her right arm. (TR 201). On January 5, 2006 Plaintiff presented with a history of complaints of cervical neck pain and pain into the trapezius and right shoulder related to overhead and shoulder level lifting at work and paresthesias in the right upper extremity. (TR 193). The treatment provider noted Plaintiff's reports of doing quite well in physical therapy and "being essentially asymptomatic" but becoming symptomatic with significant physical activities. (TR 193).

A January 2006 MRI revealed degenerative disc disease and herniated discs at C4/C5 and C5/C6 and spondylosis cervical spine with multiple neuroforaminal encroachment. (TR 187, 190-91, 193). The doctor noted that Plaintiff was "not a good candidate to do heavy physical pulling, lifting or above shoulder level activities." (TR 186-87). The doctor noted that Plaintiff's right extremity paresthesias and numbness had resolved with night splints, consistent with carpal tunnel syndrome. (TR 186). Also in January 2006 D. Walker, P.A.-C., reported that Plaintiff should be able to perform her work duties if there were jobs "that don't involve significant forceful pulling, reaching or overhead/chest level activities." (186). Plaintiff was restricted from lifting over eighteen pounds. (TR 188).

J.J. Chandler, D.O., first examined Plaintiff in January 2006 for complaints of neck pain and later opined that Plaintiff did not require medical leave and was not unable to perform any of the essential functions of her job. (TR 25, 136, 138, 256-57). In February 2006 Christopher J. Abood, M.D., diagnosed Plaintiff with neck and right arm pain and left cervical disc herniations at C4-5 and C5-6. (TR 252-54).

A February 22, 2006 MRI of the right shoulder revealed "mild hypertrophic changes in the right AC joint." (TR 205, 232). Plaintiff began treating with neurologist Gavin I. Awerbuch, M.D., in March 2006 for cervicalgia and shoulder pain. (TR 24, 136, 207, 236-37). Plaintiff's testimony that he has not recommended carpal tunnel surgery is consistent with the medical record. (TR 24). Dr. Awerbuch performed a March 2, 2006 electromyography on which he based the impressions of right carpal tunnel syndrome and C5-C6 radiculopathy, right greater than left. (TR 234). Plaintiff attended twenty-one physical therapy appointments from March 2006 through May 2006. (TR 206-19). Plaintiff was discharged with a "good" prognosis and the physical therapist reported that Plaintiff's pain at rest and with activity had decreased from a level 4 on a scale of ten to levels 2-3

4

and 2-4, respectively. (TR 218). In May 2006 Dr. Awerbuch diagnosed two-level cervical disc herniation with radiculopathy, right shoulder trauma with internal derangement, right carpal tunnel syndrome and cervical facet inflammation and referred Plaintiff to an orthopedic surgeon for evaluation of her right shoulder. (TR 225-31, 234).

In May 2006 Jerome V. Ciullo, M.D., examined Plaintiff and diagnosed a right shoulder SLAP lesion, biceps tendon partial detachment, A/C joint arthritis, and rotator cuff tendinitis which needed surgical repair. (TR 241-45, 277-79). On June 28, 2006 Plaintiff underwent surgery on her right shoulder including post thermal capsular shift, subacromial decompression, Mumford procedure and SLAP lesion repair. (TR 264-66, 270). Two weeks later Dr. Ciullo reported that Plaintiff's portals were well-healed and she needed two more weeks of immobilization of the shoulder. (TR 270). In August 2006 Dr. Awerbuch reported that Plaintiff was still recovering and he recommended "off work status." (TR 275-76). He prescribed Cymbalta for her neuropathic pain and the "stress, anxiety, and depression related to her pain and disability." (TR 276). In November 2006 Dr. Ciullo reported that Plaintiff could elevate her right arm to 145 degrees of forward flexion actively, impingement and SLAP lesion tests were negative and there was no grinding or popping. (TR 322). Plaintiff had significant improvement in reaching behind her back and was to continue with physical therapy. (TR 322-25).

Plaintiff underwent a consultative examination on September 15, 2006 in which Dr. Psychologist Leonard J. McCulloch diagnosed Plaintiff with Adjustment Disorder (309.28) with depression and anxiety, reported that stress exacerbates her physical condition (316.) and assigned a GAF of 60. (TR 283-89). Linda K. Brundage, Ed.D., completed a psychiatric review technique on October 4, 2006 and concluded that Plaintiff has a non-severe affective disorder (adjustment disorder with depression and anxiety). (TR 291-96). As set forth below, Dr. Brundage opined that

5

Plaintiff has only mild functional limitations. (TR 303-06). Plaintiff testified that she has been treating with psychologist Dr. Fugate since 2007. (TR 31). Dr. Fugate completed a mental Medical Source Statement dated February 17, 2009 which is discussed in further detail in the analysis below. (TR 349).

Shakti Kaul, M.D., medical consultant, completed a Physical Residual Functional Capacity Assessment and found that Plaintiff is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday and is limited in pushing and/or pulling with the upper extremities. (TR 308-15). The doctor found that Plaintiff should never climb ladders, ropes or scaffolds, only occasionally crouch and crawl and may frequently climb ramps and stairs, balance, stoop and kneel. (TR 310). He found that Plaintiff should not perform overhead reaching with the right arm, may perform all other manipulative activities with the right arm only occasionally and has no limitations in the left arm. (TR 311).

    **C.**    **Vocational Expert**

The vocational expert (VE) testified that Plaintiff's past work as an assembler was medium and unskilled as performed by Plaintiff, as a cup packer/inspector was light and unskilled and as an industrial sewer was light due to the significant foot pedal operation involved and semi-skilled with no advantage over an unskilled worker. (TR 39). The ALJ asked the VE to consider an individual age 49 to 52, with a GED education, past relevant work the same as Plaintiff, limited to light work, with no climbing ladders, ropes or scaffolds, only occasional crouching and crawling, frequent climbing ramps and stairs, balancing, stooping and kneeling and further limited to no overhead reaching with the right arm and only occasional handling, fingering and feeling with the right upper dominant extremity. (TR 40).

The VE testified that such an individual could not perform Plaintiff's past relevant work and there are no transferable skills. (TR 40). The VE testified that such an individual could perform a limited range of light exertion, unskilled positions such as lobby attendant (approximately 800-1,000 jobs in the region defined as Michigan), locker room attendant (1,200 to 1,400 jobs in the region) and collator/operator (2,200 to 2,400 jobs in the region). (TR 38, 40). The VE testified that the gross number of light jobs in the region which would accommodate such an individual would be limited to approximately 12,000 to 14,000 because manufacturing and heavy clerical would not apply. (TR 40-41). The VE testified that sedentary work would not accommodate the restriction to occasional handling and grasping with the right upper extremity. (TR 41).

The VE testified that if Plaintiff's complaints were credible and supported by medical evidence, she would not be able to perform any jobs due to a "combination of physical impairments which would prohibit an eight-hour-a-day" job and non-exertional limitations such as concentration, stamina and the ability to get along with others. (TR 41). The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 42).

## IV.    **ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff meets the insured status requirements through December 31, 2011, had not engaged in substantial gainful activity since January 30, 2006, the alleged onset date, and suffers from status post right shoulder injury and surgery, carpal tunnel syndrome and cervical disc disease, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 49, 51). The ALJ found that Plaintiff had the residual functional capacity to perform light exertional work further limited to never climbing ladders, ropes or scaffolds, only occasional crouching and crawling, no overhead reaching with the right arm, only occasional handling, fingering and feeling with the right upper extremity and

7

frequent balancing, stooping, kneeling and climbing ramps and stairs. (Docket no. 51). The ALJ found that Plaintiff is not able to perform her past relevant work yet she is able to perform a significant number of jobs in the economy and therefore she is not suffering from a disability under the Social Security Act. (TR 54).

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

      **B.**      **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

    (1)     she was not presently engaged in substantial gainful employment; and

    (2)     she suffered from a severe impairment; and

    (3)     the impairment met or was medically equal to a "listed impairment;" or

    (4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ failed to give controlling weight to Dr. Awerbuch's opinion as a treating physician and did not address all of Dr. Awerbuch's limitations and that the ALJ's hypothetical question did not adequately account for Plaintiff's mental limitations.

### C. Analysis

### 1. Whether the ALJ Gave Proper Weight To The Treating Physician's Opinion

Plaintiff argues that the ALJ did not adequately explain the weight given to Dr. Awerbuch's April 14, 2009 Medical Source Statement. (TR 350). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2) the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e)(1). The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

In the April 2009 Medical Source Statement at issue, Dr. Awerbuch completed the form indicating that Plaintiff is limited to lifting, carrying and upward pulling less than ten pounds occasionally or frequently, standing and/or walking two hours of an eight-hour day, sitting six hours of an eight-hour day with the need to alternate position, and is severely limited in both upper extremities in the ability to push and/or pull including the operation of hand controls. (TR 350). Dr. Awerbuch further opined that Plaintiff cannot engage in repetitive or forceful gripping, cannot keyboard, cannot perform work above shoulder level, cannot use power tools and must avoid

dangerous machinery and driving if she is drowsy. Finally, Dr. Awerbuch opined that Plaintiff's limitations were likely to disrupt a 160-hour work month for more than forty hours. (TR 350).

Despite Plaintiff's argument to the contrary, the ALJ pointedly addressed Dr. Awerbuch's Medical Source Statement and gave specific reasons for assigning it less than controlling weight. (TR 53). An ALJ does not err in "discounting the inconsistent and unsupported portions of" the treating physician's medical source statement. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). In *Hogan*, the ALJ's properly discounted the physician's opinion where the ALJ found that the limitations "stand alone," were never mentioned in the doctor's numerous treatment records and were not "supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted." *Id*. The *Hogan* court also noted the ALJ's observation that claimant's condition was repeatedly described as "mild" and records from other physicians indicated that "her condition was being controlled by medication" and the "weight of the medical evidence was more in keeping with the restrictions described by the consulting physician." *Id.*

Similar to *Hogan*, the ALJ pointed out that Dr. Awerbuch's opinion "lacks an explanation or objective findings supporting the findings of extreme limitation." The ALJ also noted that there are no medical records which support Dr. Awerbuch's extreme limitation on Plaintiff's ability to stand and walk. (TR 53). The ALJ cited the family practitioner Dr. Chandler's January 31, 2006 opinion that Plaintiff did not require a medical leave from her job and was able to perform the essential functions of her job. (TR 256-57).

Plaintiff cited a laundry list of medical records, by transcript page number only, which she argues support the limitations set forth in Dr. Awerbuch's Medical Source Statement. (TR 225, 234, 236-37, 275, 317, 366-76). The Court has reviewed the record, including these pages, in full and does not find support for the extreme limitations set forth by Dr. Awerbuch.

Dr. Awerbuch's March 2 and May 8, 2006 records and some of the other medical records to which Plaintiff cited were from examinations prior to Plaintiff undergoing surgery on right shoulder on June 28, 2006. (TR 53, 234, 236-37, 225). As the ALJ noted, findings following the surgery were normal, negative and showed no further complications from the surgery. (TR 53). The ALJ's RFC contains limitations related to Plaintiff's use of the upper right extremity, although not as limited as those set forth by Dr. Awerbuch, which address both upper extremities. The ALJ found significant work restrictions in the RFC to address Plaintiff's shoulder problems, carpal tunnel syndrome and cervical disc disease. (TR 54). The ALJ's limitations with respect to Plaintiff's upper right extremity are supported by substantial evidence. The record does not show medical evidence or a record of Plaintiff's complaints related to the left shoulder. On March 2, 2006, Plaintiff complained of neck, right shoulder and right arm pain. (TR 236-37). Plaintiff was able to elevate her right arm to about 120 degrees. (TR 237). The doctor noted that he recommended "off work status" and that Plaintiff "should follow restrictions, limitations, and proper biomechanics in her daily activities at home." The details of these restrictions or limitations are not set forth. (TR 237).

Dr. Awerbuch's examination notes from August 7, 2006, following the shoulder surgery show that Plaintiff complained of post-operative pain and ongoing neck pain, wrist pain and numbness in the hands. (TR 275). Dr. Awerbuch noted his impressions related to the right upper extremity not the left, including right shoulder trauma status post surgery and right carpal tunnel syndrome. (TR 275). This is true of the March 2 and May 8, 2006 examinations. (TR 225, 236-37). The doctor also notes two-level cervical disc herniation with radiculopathy and adjustment disorder with depression. (TR 275). On November 6, 2006 Dr. Awerbuch noted that Plaintiff continued to attend therapy and had weakness of the right shoulder with improved, yet still reduced, range of motion. (TR 317). Dr. Awerbuch reported that Plaintiff's grip was "weak on the right and

strong on the left." (TR 317). The ALJ's findings that Plaintiff's conditions were improved with medication are also supported by the record. In November 2006 Dr. Awerbuch reported that Plaintiff's pain medications "improve her ability to function within her activities of daily living" and improve "her quality of life." (TR 317).

Plaintiff also cites to pages of the transcript which were not before the ALJ. They are TR 366-76. These pages are part of documents which were provided to the Appeals Council after the ALJ's decision. (TR 351-82). Plaintiff has not raised the issue that this evidence not before the ALJ. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'ty of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material")(emphasis added)(citations omitted).

Plaintiff did not request a remand of this case pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of these records.  Plaintiff has provided no explanation for the failure to incorporate the evidence into the record prior to the ALJ's proceeding.  Therefore, he has not only failed to properly raise the issue before this Court, but to the extent the Court considers the issue, Plaintiff failed to show good cause for failing to produce the material prior to the ALJ's decision. The Court also notes that some of the documents are duplicates of documents which were before the ALJ, for example transcript page nos. 352, 361, 377-82.

Plaintiff referenced transcript page nos. 366-76 in her argument, without further development.  The Court notes that some of these pages are from examinations post-dating the ALJ's May 26, 2009 decision.  (TR 366).  The Court also notes that a review of these documents does not show "that there was a reasonable probability" that the ALJ would have reached a different disposition of Plaintiff's claim if presented with this evidence.  For example, one of the latest documents prior to the ALJ's hearing and decision is Dr. Awerbuch's March 16, 2009 note, which shows that Plaintiff continued to have some impairment of the right shoulder and right carpal tunnel syndrome but that her medications "allow her to function at high (sic) level rather than is otherwise possible improving quality of life.  She is able to take care of children and maintain household activities as long as she does not overdo it.  She is able to continue attending school."  (TR 367). The doctor confirmed that Plaintiff is to "avoid driving or dangerous activities if she is drowsy or otherwise impaired" yet no other severe limitations are noted.  (TR 367).  Plaintiff did not request remand pursuant to sentence six and has shown none of the requisite elements to establish a sentence six remand.  The Court's consideration of the records pursuant to sentence six shows that remand is not appropriate in this instance.

Plaintiff argues that the ALJ did not address Dr. Awerbuch's conclusion that the limitations would likely disrupt "a regular job schedule with low physical demands" for more than forty hours of a 160-hour work month. (TR 350). The ALJ's properly explained the amount of weight given to Dr. Awerbuch's Medical Source Statement and the ALJ's findings with respect to Plaintiff's limitations are supported by substantial evidence. The ALJ did not give controlling weight to the severity of the limitations set forth on the Medical Source Statement and he is not bound to adopt the doctor's resulting conclusion that those same limitations would disrupt a 160-hour work month.

The ALJ's findings with respect to Dr. Awerbuch's April 2009 Medical Source Statement and the ALJ's RFC are supported by substantial evidence and the ALJ properly articulated the reasons for those findings.

**2.      Whether the ALJ's RFC and Hypothetical Question Adequately Described Plaintiff**

Plaintiff agues that the ALJ "did not . . . include the 'moderate' deficiencies in maintaining attention, concentration, persistence and pace in the RFC, even though the ALJ recognized such a restriction as opined to by Ms. Zarate's treating psychologist." (Docket no. 8 p. 8). Therefore, argues Plaintiff, the hypothetical question to the VE does not accurately describe Plaintiff's limitations and therefore the ALJ's finding at step five of the sequential evaluation is not supported by substantial evidence.

Plaintiff also states that the "ALJ found Ms. Zarate had moderate difficulties in her ability to maintain concentration, persistence or pace." (Docket no. 8 p. 9). This is not so. The ALJ determined that Plaintiff's mental impairment of depression was not severe. The ALJ applied 20 C.F.R. § 404.1521 pursuant to which, "[a]n impairment or combination of impairments is not severe

15

if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "[A]n impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment could not affect the claimant's ability to work." *Salmi v. Sec'ty of Health and Human Servs.*, 774 F.2d 685, 687 (6th Cir. 1985). The ALJ concluded that Plaintiff's depression "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (TR 49).

The ALJ then went on to perform an analysis of the four functional areas set forth in 20 C.F.R. § 404.1520a for evaluating mental disorders. (TR 50). The ALJ concluded that Plaintiff has mild limitations in activities of daily living, social functioning and concentration, persistence or pace. (TR 50). The ALJ found that Plaintiff has no evidence of episodes of decompensation. (TR 50). The ALJ properly considered Plaintiff's functioning in the severity evaluation pursuant to 20 C.F.R. § 404.1520a which provides that when evaluating the severity of mental impairments, the ALJ "must follow a special technique at each level in the administrative review process," as set forth in 20 C.F.R. § 404.1520a. Section 404.1520a(d)(1) provides that "If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521)." 20 C.F.R. § 404.1520a(d)(1). The ALJ properly supported his findings in each of the functioning areas with specific citations to the evidence of record, including Plaintiff's testimony regarding her activities of daily living, caring for her son, completing housework, cooking, her interactions with others and attending classes to become a medical assistant. (TR 50, 164, 285). The ALJ ultimately concluded that Plaintiff has only mild limitations in maintaining concentration, persistence and pace. The ALJ relied on Plaintiff's testimony that she only "sometimes" had

16

concentration problems and her activities of daily living, including reading and attending school. (TR 50, 54). The ALJ's finding of mild difficulties in maintaining concentration, persistence and pace is also consistent with an October 4, 2006 State Agency Consultative Exam Report and is supported by substantial evidence in the record. (TR 303).

Despite finding mild difficulties in this area, the ALJ properly considered Dr. Fugate's mental Medical Source Statement dated February 17, 2009 and Dr. Fugate's opinion that Plaintiff was mildly limited in all areas except "the ability to maintain concentration and attention for at least two hour increments." (TR 49-50, 53, 349). It is this opinion on which Plaintiff relies to argue that the RFC and hypothetical question do not accurately describe her limitations. (Docket no. 8 p. 8). The ALJ stated that "although the opinion states" that Plaintiff has this moderate restriction, "the jobs discussed below account for this with the restriction to unskilled work." (TR 53). The Court notes the distinction that the ALJ referenced the opinion and did not ultimately adopt the opinion that Plaintiff is moderately limited in this area. The ALJ merely pointed out that although the RFC does not contain a limitation to unskilled work, the hypothetical question to the VE did on which the ALJ relied did contain such a limitation and was therefore provided more restricted (unskilled) jobs than would be required by the RFC. The ALJ's RFC was supported by substantial evidence in the record and those restrictions were included in the ALJ's hypothetical question to the VE. The ALJ properly relied on the VE's testimony in response to the hypothetical question and the ALJ's finding at step five is supported by substantial evidence in the record.

## **VI.     CONCLUSION**

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary

Judgment (docket no. 8) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 10) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 13, 2011         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 13, 2011         <u>s/ Lisa C. Bartlett</u>
                                         Case Manager